ROBERT M. CHALMERS and Others, Copartners Doing Business under the Style and Firm Name of JOHN G. MYERS COMPANY, Respondents, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, as Successor to THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

Third Department, November 15, 1916.

Common carriers — negligence — liability for loss of freight caused by unusual freshet or flood — evidence — burden of proof.

The liability of a railroad company for the loss or damage to freight in a car standing in the defendant's yard, caused by an unusual freshet in an adjoining river, is for negligence as a warehouseman, and in order to establish the liability of the railroad company it must appear that it did not exercise the care which an ordinarily prudent person would exercise with reference to the property at the time and under the circumstances.

The plaintiff in an action to establish such liability assumes the burden of proving that the defendant was negligent in storing the freight at a place where it was liable to be destroyed by the water.

Evidence in such an action examined, and *held*, insufficient to establish the defendant's liability.

APPEAL by the defendant, The New York Central Railroad Company, from a judgment of the County Court of Albany county in favor of the plaintiffs, entered in the office of the clerk of the county of Albany on the 16th day of February, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 21st day of February,

1916, denying defendant's motion for a new trial made upon the ·minutes.

*Visscher, Whalen & Austin* [*H. Leroy Austin* of counsel], for the appellant.

*Burnham & Vrooman* [*Vernon A. Vrooman* of counsel], for the respondents.

Kellogg, P. J.:

The plaintiffs have recovered judgment for the loss or damage to a part of a carload of refrigerators standing in the defendant's Albany yard, caused by the unusual freshet in the Hudson river in March, 1913. The ground of the alleged liability is set forth in the complaint that the refrigerators in the course of transportation from Eau Claire, Wis., to Albany, arrived in the defendant's yard at Albany, March 18, 1913; that on the twentieth day of March the plaintiffs removed part of the said refrigerators, leaving the balance in the defendant's car in its yard, and that the defendant negligently allowed the car with the refrigerators in it to remain at a place which it knew and had reason to know was liable to be submerged in the then prevailing high water and overflow of the Hudson river, and that the river did overflow and cause the damage and loss to the refrigerators. The damage occurred March twenty-eighth.

Defendant's only liability was for negligence as a warehouseman. The refrigerators at the time of the loss were interstate freight. (*Cleveland & St. Louis Railway* v. *Dettlebach*, 239 U. S. 588; *Chicago, Rock Island, etc., Railway* v. *Hardwick Elevator Co.*, 226 id. 426; *Southern Railway* v. *Prescott*, 240 id. 632.)

The plaintiffs assumed the burden of proving that the defendant was negligent in storing the refrigerators at a place where they were liable to be destroyed by the flood, and to sustain the verdict it must appear that the defendant did not exercise the care which an ordinarily prudent person would exercise with reference to the property at the time and under the circumstances. The complaint presents the only real ground upon which a liability could be based, and the burden

of proof rested upon the plaintiffs to establish defendant's negligence. (*Railroad Company* v. *Reeves*, 10 Wall. [77 U. S.] 176; *Barnet* v. *N. Y. C. & H. R. R. R. Co.*, 167 App. Div. 738.)

The defendant's freight yard at Albany adjoins the Hudson river. In it there are about forty tracks, with various switches. Access to the yard is by a single track of railroad, which crosses the tracks of the Delaware and Hudson Company, and a crossover or tower at the point of intersection, controlled by the Delaware and Hudson Company, allows the defendant's cars to pass over the intersection from time to time, and the defendant cannot move its cars into or out of the yard without the signal from the Delaware and Hudson tower, the Delaware and Hudson Company having the right of way over the crossing, and the defendant's rights at the crossing being subordinate to that right.

The defendant, March eighteenth, gave the plaintiffs notice of the arrival of the freight and required its removal within forty-eight hours. They paid the freight and draft, and the car was placed on the delivery track, the usual place for unloading. The track upon which it was placed was the highest ground in the yard and about 500 or 600 feet from the river. During the time mentioned between 300 and 400 cars were stored in the yard. Six hundred or 700 cars per day usually came into the yard. Large quantities of freight were in the two warehouses in the yard. On March twentieth, two days after the arrival of the car, the plaintiffs removed from it to their warehouse fifty-seven refrigerators, a truckload, leaving fifty-three refrigerators in the car. The street leading to the plaintiffs' warehouse, particularly the entrance to their warehouse, was in bad condition, and for that reason the plaintiffs claim the remainder of the refrigerators were not removed at the time.

March twenty-sixth flood conditions prevailed in the watershed of the Hudson river and at Albany. The high water was caused by the excessive rains through the watershed and not by ice or melting snow. The highest track of the defendant's yard was seventeen and sixteen one-hundredths feet above mean sea level. The floor of the car was forty-six and

one-half inches above the rails, so that the freight in the car would not be wet unless the water rose over twenty-one feet above mean sea level. The water in the river rose rapidly during the twenty-sixth and twenty-seventh, and at one P. M. on the twenty-seventh was seventeen and seven one-hundredths feet above mean sea level, just covering the rail of the track upon which the car stood. The water reached its extreme height at one P. M. March twenty-eighth, when it was a fraction over twenty-two and four-tenths feet above mean sea level, with the result that it entered the car and practically destroyed the refrigerators. The extreme recorded height of water prior to March, 1913, was twenty-one and sixteen one-hundredths feet above mean sea level, on February 9, 1857. There was no other previous record showing that the water of the river at Albany was twenty feet above mean sea level.

On the morning of the twenty-sixth water began to come over the tracks in the yard nearest the river. That was, however, no unusual condition because frequently the summer and spring rains bring it over them. Prior to the twenty-seventh, aside from the water on the shore tracks, there had been no water in the yard proper; but upon the morning of the twenty-seventh water began to go into the yard and at about eight o'clock the yardmaster was ordered by his superior to get the cars and freight out of the yard. He immediately stopped all cars from entering the yard and used all reasonable efforts to remove the cars from the yard. He began at once to put empty cars at the warehouses to remove the freight, and began to move cars, taking those nearest the river. He had three engines in the forenoon, with ample men. About noon his superior asked what he needed and he replied that he ought to have another engine on account of the heavy grade to get out of the yard, because he had to move rapidly in order to get any show from the Delaware and Hudson. Two large engines were sent him about one o'clock. An engine was attached to this car and other cars upon the same track about eight o'clock on the morning of the twenty-seventh, with the intention of removing them from the yard, but consignees were removing freight from these cars with trucks and this car was not moved at that time; the engine immediately began to remove other

cars.  Such removal by the consignees continued until about noon.  About one o'clock on the twenty-seventh the cars upon that track, including the car in question, were moved towards the exit and were about at the Morton elevator, but the Delaware and Hudson Company by the constant use of its tracks refused permission to let these cars pass over them and they were thereby compelled to remain in the yard.  The yardmaster at various times sought permission of the Delaware and Hudson Company tower to move these cars, but was unable to obtain it.  The car with others remained there attached to the engine ready to be moved until about ten o'clock, when timbers and driftwood came down the river, drifted in between the cars and it was impossible to move them.  In attempting to move some other cars one became derailed, which rendered it impossible to use the track so that the car in question could not be moved in either direction.  The men worked diligently until the height of the water rendered it impracticable tó remove the cars.  The defendant succeeded in getting from the yard all of the cars but about forty.

The plaintiffs are residents of Albany, carrying on a large business there, and evidently had full knowledge of the flood conditions in the Hudson at Albany during the time in question.  They also knew just where their car was located in the yard and the location of the yard with reference to the Hudson river, and at all times undoubtedly had access to the car, but did not feel called upon during the freshet to attempt to remove their freight.  Other consignees having freight in the yard apparently apprehended no danger until the morning of the twenty-seventh, when they began to remove it.  It is fair to assume, therefore, that the plaintiffs, the other consignees of freight in the yard, and the defendant, had no reasonable ground to apprehend danger from the flood to freight in the yard until the morning of the twenty-seventh.  Perhaps the care which the plaintiffs exercised towards their freight prior to the twenty-seventh was some measure of the reasonable care which the ordinarily prudent man would exercise under the circumstances.  It was so highly improbable that water would enter this car upon the high track upon which it was that no negligence can be charged against the defendant up to the

morning of the twenty-seventh when it began to remove freight from the yard.  Up to that time the ordinarily prudent man would consider the freight safe in the yard; after that time he would have reason to apprehend that it might be injured by the flood.  If there is any negligence, therefore, upon the part of the defendant it must be for something which it omitted to do on and after the twenty-seventh.  Apparently the car in question would have been removed from the yard soon after eight o'clock when the engine was attached to it and the other cars upon this delivery track if the removal had not been delayed by the different consignees seeking to remove their freight.  The plaintiffs' freight had no preference over the freight of any other consignee; a like duty was owing by defendant to each carload and each parcel, to exercise a reasonable care for its preservation from impending danger.  No consignee can claim negligence against the defendant because it removed the freight of some other consignee in the ordinary dispatch of business before his freight was reached.  None of the forty carloads left upon the track was discriminated against, but cars were left upon the track because under the existing conditions all the freight could not be removed and the freight removed had just as imperative a right to be removed as that of the plaintiffs or any other consignee.  In the afternoon the engine was attached to the car in question and the other cars upon the delivery track, and the removal would have been accomplished had it not been for the necessities of the Delaware and Hudson Company which caused it to refuse to allow the defendant's cars to cross its tracks and thereby made it impossible for the defendant to remove any other car from the track. We cannot find that the defendant omitted to perform any act which it reasonably could have performed for the safety of the plaintiffs' freight after it became reasonably apparent that it was in danger.

The official in charge of the United States weather bureau at Albany, on the morning of the twenty-seventh, issued a type-written paper to the newspapers predicting that the water would reach twenty to twenty-one feet in Albany within the next twenty-four or thirty-six hours, and he telephoned to a large number of business houses to the same effect.  We may

fairly assume that the plaintiffs and the defendant had knowledge of this prediction.    At about one o'clock on the twenty-seventh it is evident that the defendant's yardmaster was experiencing or was fearing some difficulty in being able to cross the tracks of the Delaware and Hudson, as he required another engine in order to make the passage quicker when an opportunity offered.    Apparently after that time no opportunity offered.    We assume from the record that the Delaware and Hudson Company acted in good faith, and that the freshet imposed upon it such conditions that in order to take care of its own business it was necessary for it to deny the defendant the privilege of crossing its tracks.    There is not enough in the record to indicate with any reasonable degree of certainty what the conditions were with reference to the crossing of the Delaware and Hudson tracks during the forenoon, and whether if the extra engine had been put into the yard in the morning all the cars might have been removed.    There is nothing to show that a reasonably prudent person would have anticipated that the conditions of the Delaware and Hudson Company's service during the flood would render it necessary to preclude the defendant from crossing its tracks at this place.    The actual situation of its tracks with reference to the advancing water, the conditions prevailing with reference to that company during the morning of the twenty-seventh, and the necessities of its business do not appear, and it is not apparent that the defendant had knowledge of any conditions during the morning of the twenty-seventh which would cause a reasonably prudent person to anticipate that crossing would be denied him in the afternoon if the flood continued.

We conclude, therefore, that the judgment should be reversed as against the evidence and a new trial granted, with costs to the appellant to abide the event.

All concurred.

Judgment and order reversed as not supported by the evidence and new trial granted, with costs to appellant to abide event.