FADLO G. HADBA, Respondent, *v.* THE BALTIMORE AND OHIO RAILROAD COMPANY, Appellant.

First Department, May 31, 1918.

Carrier — interstate commerce — injury to goods by act of God — unprecedented flood — proximate cause of injury — failure of carrier to notify plaintiff of arrival of goods.

In the case of an interstate shipment, the liability of the carrier is governed by the Federal statutes and decisions.

Where goods shipped by the plaintiff were destroyed and damaged by an extraordinary flood, an act of God for which the defendant carrier was not liable, the flood was the proximate cause of the injury and the plaintiff cannot recover upon the ground that the defendant failed to give notice of the arrival of the goods before the flood, so that the plaintiff might remove them from the defendant's warehouse.

APPEAL by the defendant, The Baltimore and Ohio Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of April, 1917, upon the verdict of a jury for $2,900, and also from an order entered in said clerk's office on the 19th day of April, 1917, denying defendant's motion for a new trial made upon the minutes.

*Robert H. Neilson* of counsel [*Henry E. Chapin* with him on the brief; *Cravath & Henderson*, attorneys], for the appellant.

*A. S. Gilbert* of counsel [*Francis Gilbert* with him on the brief; *Gilbert, Lauterstein & Gilbert*, attorneys], for the respondent.

LAUGHLIN, J.:

The recovery was for the loss of certain rugs or carpets and for damages to others shipped by plaintiff over defendant's

line on the 21st of March, 1913, from Parkersburg, W. Va., to Zanesville, O., consigned to Hadba Bros., under which name he was doing business, at Zanesville, O. The defendant's line ran to Zanesville but by a traffic arrangement between it and the Pennsylvania railroad all goods so shipped entered Zanesville via the Pennsylvania railroad and were received at and delivered from its freight house near the bank of the Muskingum river in the vicinity of the defendant's freight house at Zanesville. The goods left Parkersburg the same day and arrived at the Pennsylvania freight house, Zanesville, the next day, which was Saturday, in the afternoon and were there unloaded on Monday morning. It rained hard on Sunday and harder still on Monday and continued to rain on Tuesday. The floor of the freight house was four feet above the railroad tracks and the former high-water flood mark was two feet below the floor of the freight house. When the freight house employees left Tuesday night the river was still within its banks and it was not anticipated that it would rise above the former high-water mark; but that night it rose rapidly and toward morning danger to the freight was feared and some of the employees of the freight house returned gaining access by boats and proceeded to place the freight on shelves and benches. They were finally compelled to flee for their own safety. The water remained so high that the employees were not able to return to the freight house until Sunday, March thirtieth, at which time the loss and damages had been suffered from the flood. Many of the papers in the Pennsylvania freight office were washed away or destroyed by the flood. It was the custom of the office to send notice by postal card to the consignee addressed according to the waybill, which was merely Zanesville, O., and such notice would have been sent out according to the custom on Monday morning when the freight was unloaded. The clerk whose duty it was to send the notices had no personal recollection with respect to sending a notice in this instance, but if sent it should have reached the post office by noon that day. The plaintiff testified that he arrived in Zanesville Tuesday morning, the twenty-fifth of March, and inquired for mail at the post office shortly after noon, but received none; that he then went to defendant's freight station

and inquired at the office for the goods and was informed that they were not there, but that he was not informed that the goods would arrive at the Pennsylvania station, and that the first information he received to that effect was when he called again at defendant's freight station on Friday or Saturday, and about a week later he received a postal card notifying him of the arrival of the goods. The plaintiff wrote a letter to defendant on the 16th of June, 1913, which tends to show that he was informed when he first called at defendant's freight office in Zanesville that the Pennsylvania Company handled the freight shipped by it to that point from Parkersburg; but that presented a question of fact which presumably was determined in his favor, and we do not deem it necessary to review it.

The recovery was had on the theory that the defendant was negligent in not giving plaintiff prompt notice of the arrival of the goods, and that since, if he had received such notice, he might have removed the goods on Tuesday before the flood, such negligence and not the flood was the proximate cause of the loss and damages. The bill of lading contained an express provision relieving the carrier from liability for any loss, damage or delay caused by the act of God.

The learned counsel for the respondent concedes that if the goods were lost or damaged by flood while in route the defendant would not be liable, even though the goods would not have been affected by the flood if the carrier had not been negligent with respect to transporting them; and in such case it has been authoritatively held that the flood, which was the act of God, and not the negligence of the carrier, is the proximate cause of the loss or damages. (*Barnet* v. *N. Y. C. & H. R. R. R. Co.*, 222 N. Y. 195; *Railroad Co.* v. *Reeves*, 10 Wall. 176; *St. Louis, etc., Railway* v. *Commercial Ins. Co.*, 139 U. S. 223; *Constable* v. *National Steamship Co.*, 154 id. 51.) The learned counsel for respondent contends that those decisions are not controlling for the reason that here the goods had arrived at their destination and the negligence of the carrier was with respect to giving notice of their arrival or in failing to inform plaintiff when he inquired on Tuesday, the day preceding the flood, that they would arrive at the Pennsylvania station, and he relies on *Thyll* v. *New York &*

*Long Branch R. R. Co.* (92 App. Div. 513) in support of his contention that the carrier was liable for any loss or damages to the goods thereafter from any cause. In the *Thyll* case, however, the carrier was held on the ground that it was negligent with respect to caring for the goods after it failed to deliver them on demand, and the authorities cited therein in support of a general statement in the opinion that the carrier would be liable for any subsequent loss or damages (*Faulkner* v. *Hart*, 82 N. Y. 413, and *McKinney* v. *Jewett*, 90 id. 267) hold merely that the carrier remains liable *as such* until the arrival of the goods at destination and reasonable notice and opportunity to the consignee to remove them. This was an interstate shipment, and the liability of the carrier is governed by the Federal statutes and decisions, which are more favorable to the carrier with respect to its negligence being the proximate cause than were formerly the decisions of our State courts. No doubt under the circumstances the defendant's liability as a carrier continued in the case at bar, but the damages were caused by the flood, which was an act of God for which the carrier was not liable, and the negligence on its part of which complaint is made was not, we think, the proximate cause under the decisions cited. If the demand for the goods had been sufficient to charge defendant in conversion the case would be quite different; but plainly it was not, and the case was not tried on that theory.

It follows that the judgment and order should be reversed, with costs, and the implied finding of the jury that the damages were caused by defendant's negligence is reversed, and the complaint dismissed, with costs, on the motion made by defendant on the trial.

CLARKE, P. J., DOWLING, PAGE and SHEARN, JJ., concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.