Samuel A. Spiegel, J.
This is an action -hy an importer against both a steamship line and a pier operator to recover $1,594.54 for flood damage to a shipment of 100 cartons of cabana sets, purchased by plaintiff and shipped from Hong Kong to New Torlc aboard defendant’s steamship. The vessel arrived in New Torlc on or about February 12, 1960, and the cargo was discharged into the hands of defendant pier operator. The cahgo was Eventually delivered to plaintiff in a damaged condition.
Defendant steamship cross-claims over against defendant.pier operator, claiming that its control over the property ceased, six days-before damage was sustained. Both defendants, however, *514 unite in the common defense that an unprecedented flood on the night of February 18,1960 caused the damage.
Against defendant steamship, plaintiff’s complaint alleges liability both as a common carrier and as a bailee. Against defendant pier operator, plaintiff alleges liability only as a bailee. Liability as a common carrier transcends liability as a bailee. A common carrier can be excused only by an “ act of God ” or by the act of a public enemy. All that plaintiff needs to prove is damage in the hands of the carrier. A bailee, however, must be proven negligent (see Storm v. Pennsylvania R. R. Co., 30 Misc 2d 757).
To excuse a carrier, and a fortiori a bailee, from liability, the defendant must prove that the damage was caused by an “ act of God ” (see Barnet v. New York Cent. & Hudson Riv. R. R. Co., 222 N. Y. 195; Hadba v. Baltimore & Ohio R. R. Co., 183 App. Div. 555; Chalmers v. New York Cent. R. R. Co., 175 App. Div. 239; Empress of France, 49 F. 2d 291).
‘1 Any misadventure or casualty is said to be caused by the ‘ act of God ’ when it happens by the direct, immediate, and exclusive operation of the forces of nature, uncontrolled ox-uninfluenced by the power of man and without human intervention, and is of such a character that it could not have been prevented or escaped from by any amount of foresight or prudence, or by any reasonable degree of care or diligence, or by the aid of any appliances which the situation of the party might reasonably require him to use.” (Black’s Law Dictionary [4th ed.], p. 43.)
However, in order for this defense to be effective, it must be shown that the ‘ ‘ act of God ’ ’ was the sole and exclusive cause of the casualty axxd that there is no admixture of hxxman agency (see Michaels v. New York Cent. R. R. Co., 30 N. Y. 564). In order to determine whether or not there has been an admixture of human agency, this basic questioxx must be resolved: Did defendant’s negligence place the goods in such a position as to be vulnerable to damage ? Or, stated in another way, could the effects of the storm or force of nature have been reasonably avoided by the defendant?
Both United States courts and New York State courts recognize the defense of “ act of God ”. However, in determining the question as to the intervention of human agency, there is a marked distinction. In a State court, the defendant, after-proving “ act of God ”, also has the burden of proving his freedom from intervexxing or contributixxg xxegligence. However, under the Federal rule where 1 ‘ act of God ’ ’ has been proven, the plaintiff resumes the burden of proving defendant’s inter *515 vening or contributing negligence (see Barnet v. New York Cent. & Hudson Riv. R. R. Co., 222 N. Y. 195, supra).
Because this action arises out of an international shipment of goods, the Federal law applies, and consequently plaintiff has the additional burden of proof (see Barnet v. New York Cent. & Hudson Riv. R. R. Co., supra; M. & T. Trust Co. v. Export S. S. Co., 262 N. Y. 92).
However, even if the State law were to be applied to the case at bar, so that defendants had the burden of proving their freedom from contributory negligence, nonetheless, the testimony adduced at this trial would still preponderate in favor of the defendants.
There is no question but that this flood was of itself an “ act of God ”. Testimony showed that the flood occurred somewhat after midnight of the night of February 17, 1960. At 5:00 p.m. of the same day the United States Weather Bureau forecast predicted tides of only two feet above normal, a forecast which in and of itself would not have, imposed a duty or placed an obligation upon the defendants to alter their normal course of operations. There was nothing contained in this official weather forecast to put the defendants on notice that the tides would rise in fact to more than five feet above normal, nor could they have reasonably foreseen this unseasonable occurrence from any of the surrounding circumstances. According to tide records kept by the United States Army Corps of Engineers and introduced at the trial, only two tides since 1893, a period of 67 years, have ever reached the height and proportions of the tide of February 18, 1960. One occurred in November of 1950 and the second in November of 1953. Both tides were the result of hurricanes and both were in the Fall, the traditional season for high tides. In addition, and considered by the court, was the fact that both previous tides had happened years before the defendant pier operator leased the premises in 1957. It would be manifestly unjust to charge a party with lack of foresight under such circumstances.
Further, to attribute liability to the defendant pier owner for not avoiding the effects of the resulting flood, in effect, would be to penalize him by making him pay a premium for the lack of superhuman qualities, in failing to. envision a sudden high tide, out of season, without experience with any prior one, and without adequate notice" thereof.
So far, this court has applied the traditional common-law principle embodied in the tried if not tired phrase 1 ‘ act of God ’ ’. In this nuclear age, man’s unlimited capabilities and scientific advancement have brought him to the very threshold of other *516 planets. His newly-harnessed nuclear power causes atmospheric reactions as yet unresolved and unpredicted, next to which his ability to create rain by the use of dry ice seems almost primitive, Is it not time to relieve Nature of even the formal blame for many acts which now seem to be within the scope of man’s prowess? Perhaps the term “ act of God ” should be rejilaced by a concept which reflects the possibility of human causality as well as that of the Divine. In determining liability in a situation like the present, what is more important than the identification or nomenclature of the unknown cause is the answer to the question of whether there was any intervention or foreseeability or control on the part of defendant. If there is a negative answer to this question, then the result simply must be damnum, fatale, in that the damage to plaintiff’s goods must be borne by him and not by the carrier or bailee in whose custody the goods had been entrusted.
The court then holds that the damage to plaintiff’s goods was caused by an act over which neither defendant had the slightest control and whose effects could not have been reasonably foreseen nor avoided.
Accordingly, this court awards judgment for defendant Nippon Yusen Kaisha and defendant Universal Terminal & Stevedoring Corporation.