JERSEY CENTRAL POWER AND LIGHT COMPANY, Respondent-Appellant, v. WESTINGHOUSE ELECTRIC CORPORATION, Respondent, and ERIE LACKAWANNA RAILROAD COMPANY, Appellant-Respondent.

First Department, February 15, 1972.

*Lloyd W. Roberson* for appellant-respondent.

*Benjamin L. Tell* of counsel (*Solomon M. Cheser* with him on the brief; *Tell, Cheser, Werner & Breitbart,* attorneys), for appellant-respondent.

*Peter B. Sobol* of counsel (*Cravath, Swaine & Moore,* attorneys), for respondent.

CAPOZZOLI, J. This appeal results from an action to recover for damage to a transformer manufactured by the defendant, Westinghouse Electric Corporation and shipped to the purchaser, Jersey Central Power and Light Company, the plaintiff herein, by way of defendant, Erie Lackawanna Railway Company, sued herein as Erie Lackawanna Railroad Company.

A motion for summary judgment was made at Special Term by the plaintiff against both defendants. It resulted in an order dismissing the complaint on the merits as against Westinghouse and the latter recovered on its two counterclaims against the plaintiff. The order further denied the motion as against Erie,

holding that the liability of Erie for damage to the transformer was established for all purposes, but that there were questions of fact to be determined as to whether plaintiff gave proper notice of claim and if there was waiver of same.

Plaintiff appeals from so much of the order as granted summary judgment in favor of Westinghouse and dismissed its complaint against it, granted judgment to Westinghouse on its counterclaims, denied its cross motion against Erie for summary judgment and denied its motion to dismiss Erie's second affirmative defense.

This court has granted the motion of Westinghouse to dismiss the appeal of Erie insofar as such appeal sought to affect the order and judgment resulting from Westinghouse's original motion, for the reason that Erie was not an aggrieved party.

The record discloses that the transformer was manufactured, inspected and tested by Westinghouse. It was 72,480 pounds in weight, 16 feet 9 inches in height, including the car height, and 6 feet 8 inches in width.

The results of those tests are affixed to the affidavit of George F. Mitchell, Jr., the manager of the Core Form section of Westinghouse at the plant where the transformer was built. Thereafter the transformer was loaded, blocked and braced on a railroad car of Erie. An Erie inspector was present, examined the car and the transformer and then signed a bill of lading therefor, without exception. Amongst other things, on the face of the bill of lading there was typed, in capital letters, the following: "THIS CAR CONTAINS AN IMPACT REGISTER K4195, SEAL NUMBER 31004 CUSTOMER ONLY PARTY ALLOWED TO REMOVE REGISTER". There was also a notation "DO NOT HUMP". It is agreed by all that this last expression means that the transformer was not to be subjected to shock or excessive jolting. "Humping" is the practice whereby a railroad car is released within a railroad yard, at the height of a hill, from which it rolls down the track and is switched so as to collide with other cars to form a train.

When the car arrived at Lincoln Park, New Jersey, an Erie agent noticed that the transformer had shifted its position and that the tie rods were bent. It is urged by the plaintiff, and not contradicted by Erie, that this condition was caused by an impact which was recorded by the impact register in "Zone 4". This indicates that the transformer had sustained an impact in excess of six times the force of gravity. When the agent of Erie first made his observations of the shift of the transformer and the bent tie rods, he notified representatives of plaintiff and Westinghouse. Those representatives, together with one repre-

senting Erie, made a preliminary examination of the transformer in order to ascertain whether it was damaged. They opened the transformer man-hole cover and found pieces of insulating board floating on the oil, which was an indication of something wrong in the transformer.

Mr. Mitchell testified, in his examination before trial, that the impact suffered by the transformer, in the course of its carriage from the Westinghouse plant to Lincoln Park, New Jersey, had caused the insulating boards to be knocked from their normal positions. In order to ascertain the actual damage which had been caused to the transformer en route, it was tested for internal damage. It was found that the damage was so extensive that it had to be transported back to the Westinghouse plant where it was disassembled and rebuilt.

It is not contradicted that the shifting of the transformer and the bending of the rods, as first noted by the Erie agent, indicated that the transformer had been subjected to a severe jolt, indicative of "humping", contrary to the specific instructions contained on the face of the bill of lading. This appears to be conceded by Erie, in its letter addressed to a Mr. Burt, of Westinghouse, dated December 23, 1965, in which, amongst other things, there is found the following: "The impact registered at 11:50 P.M., October 8th occurred while car was being handled at Taylor yard, Scranton, Pa.

"All employees involved were interviewed and instructed in regard to the importance of exercising care and judgment in handling loads of this type."

It is well established that, in an action against a common carrier to recover for damage to goods, where the plaintiff introduces evidence that goods were delivered to the carrier in good condition and that they were delivered in a damaged condition at the point of arrival, there is a presumption that the damage occurred through the fault of the carrier and this casts a burden upon the carrier of proving that the damage was occasioned by a cause which excepts the carrier from absolute liability. (7 N. Y. Jur., Carriers, § 182.)

Different courts have used different expressions in discussing this rule, but the result reached is the same, namely: that, in an action against a carrier for loss or damage to cargo while in the carrier's possession, it is sufficient, in order to recover damages, without proving negligence, to prove ownership, delivery to the carrier in good condition and failure to deliver to the consignee in the same condition. (14 Am. Jur. 2d, Carriers, § 618; *Lehigh Val. R. R. Co.* v. *State of Russia,* 21 F. 2d 396.)

" All that plaintiff needs to prove is damage in the hands of the carrier." (*Resnick Co.* v. *Kaisha,* 39 Misc 2d 513, 514.)

In *Storm* v. *Pennsylvania R. R. Co.* (30 Misc 2d 757, 759) the court, referring to a concession by the defendant therein that the liability of a common carrier for loss or damage to goods delivered to it for transport is substantially equivalent to that of an insurer, stated: " This concession is in accordance with the plain import of the language of the Carmack Amendment to the Interstate Commerce Act [citing cases]." (Also, see, *Pereira* v. *American Ry. Express Co.,* 207 App. Div. 692; *Wald-Green Food Corp.* v. *Acme Fast Frgt.,* 200 Misc. 679, affd. 200 Misc. 687, mot. for lv. to app. den. 279 App. Div. 766; *Danziger* v. *Pennsylvania R. R. Co.,* 34 N. Y. S. 2d 722; *Perkel* v. *Pennsylvania R. R. Co.,* 148 Misc. 284, 287.)

This record clearly establishes, by documentary and evidentiary facts contained in the affidavits in support of Westinghouse's motion and plaintiff's cross motion, that Erie received the transformer in good condition and thereafter delivered it in damaged condition. This casts upon Erie the burden of proving that the damage was occasioned by a cause for which it was not responsible. (*Wells Laundry & Linen Supply Co.* v. *Acme Fast Frgt.,* 138 Conn. 458.) Erie was bound to come forward to present evidentiary data to support its position of nonculpability. This it has failed to do. A review of Erie's affidavits convinces this court that there is nothing contained therein which raises a factual issue which should be tried. Its affidavits are basically devoid of evidentiary facts, in clear violation of the well-established rule that a party must assemble and lay bare its proof in order to overcome an application for summary judgment when same is based upon factual averments. (*Di Sabato* v. *Soffes,* 9 A D 2d 297; *Desmond* v. *20th Century Fox Record Corp.,* 36 A D 2d 925, 926.)

It is difficult to understand the contention of Erie that there was no proof of the reliability of the impact register. The fact is that Erie relied, not only on the visible evidence which showed the shift of the transformer when it arrived at its destination as first observed by Erie's agent, but it pinpointed the time of the impact by referring to the impact register. The letter of Erie, addressed to the Westinghouse Corporation, to which reference has already been made, clearly supports this. Reference is also made to the fact that a wrench was found in the casing of the transformer, but Erie does not claim any connection whatever between that and the damage which was ascertained. The innuendo contained in the affidavit of John H. Ray, chief engi-

neer of Erie, by which he tries to raise some question as to, whether the damaged transformer was the same one shipped by plaintiff is unfounded, because the specific transformer which was shipped and damaged is identified by the letter of Erie to Mr. Burt, above mentioned, and there is certainly no indication of any suggestion that all the parties are not talking about the same transformer.

The inquiries posed by Erie are far from evidentiary factual averments and find no support in the record. It is an attempt to cloud the outstanding established fact in this record that Erie has simply failed to meet the evidence adduced by the plaintiff, which clearly spelled out a case against Erie. In other words, no real issue has been raised by Erie.

The order and judgment appealed from should be affirmed, with costs.

MURPHY, J. (dissenting in part). On the record before us, I am not satisfied that Erie alone is culpable. In reaching such determination I am cognizant of the fact that, for the purposes of this appeal, Erie is not aggrieved by the exoneration of Westinghouse (CPLR 5511; 7 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5511.08). Indeed, on July 1, 1971, upon application of Westinghouse, we dismissed Erie's appeal from the judgment and from so much of the order as favored Westinghouse. I also recognize that plaintiff does not seriously press its appeal against Westinghouse, understandably content with a finding against one presumably solvent defendant; although it is noted that restoration to the *status quo ante* is requested if we reverse the finding against Erie on liability.

Briefly stated, plaintiff is suing for damages to a large transformer it purchased from Westinghouse, which was transported by Erie. Not certain which party was responsible for such damages, it sued both.

While it appears uncontested that when the transformer reached its destination at Lincoln Park, New Jersey, it had visibly shifted its position in the railroad car and that an impact register applied thereto recorded that the transformer had received a severe jolt; it also appears undisputed that Westinghouse (after manufacturing and allegedly inspecting and testing it), loaded and secured the transformer on the railroad car and that the reliability of the impact register (which had run out prior to destination) was never established. It further appears that an on-site inspection at the destination point disclosed no visible external or internal damage. Interestingly, and perhaps significantly, when the oil was drained for internal

288

inspection, a left-over Westinghouse wrench was found inside the transformer.

Thereafter, plaintiff transported the transformer to its site where difficulties were encountered when it sought to energize the unit; and it was returned to Westinghouse for disassembly and rebuilding. Subsequent inspection disclosed that the apparent difficulty arose in the no-load tap changer. But there is nothing in the record to show any particular defect in the no-load tap changer resulting from impact, acceleration or deceleration forces. Moreover, it is entirely conceivable that plaintiff, itself, may have caused extensive damage when it energized the transformer.

In short, I find nothing in the record to conclusively support a finding of a transit-caused physical defect. On the contrary, there appears to be sufficient doubt as to the factual issues to deny the drastic remedy of summary judgment. (*Glick & Dolleck* v. *Tri-Pac Export Corp.*, 22 N Y 2d 439.)

Accordingly, I would reverse the judgment appealed from, modify the order appealed from by deleting decretal paragraphs " (1) ", " (5) " and " (6) ", and remand the entire matter to a trial court for determination.

Stevens, P. J., and McGivern, J., concur with Capozzoli, J.; Murphy, J., dissents in part in an opinion, in which Kupferman, J., concurs.

Order and judgment, Supreme Court, New York County, entered on March 8, 1971 and April 13, 1971, respectively, affirmed. Respondent Westinghouse shall recover of appellant Erie $50 costs and disbursements of the appeals.