**TATLOW & PLEDGER (PTY) LTD., Plaintiff,**

v.

**HERMANN FORWARDING COMPANY and Farrell Lines Incorporated, Defendants.**

**HERMANN FORWARDING COMPANY, Defendant and Third-Party Plaintiff,**

v.

**LYONS TRANSPORT, INC., Third-Party Defendant.**

**No. 76 Civ. 2903 (KTD).**

United States District Court, S. D. New York.

Aug. 18, 1978.

As Amended Sept. 5, 1978.

Symmers, Fish & Warner, New York City, for plaintiff; William Warner, New York City, of counsel.

Lilly, Sullivan & Purcell, P. C., New York City, for defendant Farrell Lines Inc.; Charles E. Schmidt, New York City, of counsel.

Penzer & Sloan, New York City, for defendant and third party plaintiff Hermann Forwarding Co.; Carl R. Sloan, David H. Gendelman, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for third party defendant Lyons Transport, Inc.; Andres Runne, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This is an action to recover for the loss of certain goods consigned to plaintiff Tatlow & Pledger (PTY) Ltd. a foreign corporation with a place of business in South Africa. Plaintiff has sued Hermann Forwarding Company ["Hermann"], the overland carrier of the goods, and Farrell Lines Incorporated ["Farrell"], the ocean carrier, claiming, in essence, that as common carriers they are responsible for the pilferage which plaintiff asserts took place at some point between the consignor's place of business in Chicopee, Massachusetts and the dock in East London, South Africa. Hermann has impleaded Lyons Transport, Inc., a company in whose Staten Island warehouse the goods were stored prior to their delivery to the Brooklyn dock from which the voyage to South Africa began. This Court has jurisdiction by virtue of the admiralty and maritime laws, as well as by reason of ancillary jurisdiction. *See Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800 (2d Cir. 1971).

A trial was held before me on July 10, 1978, at which time all the parties submitted various exhibits, including depositions, but presented no live testimony. The parties were given leave to submit post-trial memoranda. The following constitutes my findings of fact and conclusions of law.[1]

Plaintiff purchased athletic equipment consisting of golf clubs, golf bags and golf balls from Spalding, a sporting goods manufacturer located in Chicopee, Massachusetts. Spalding arranged with Hermann Forwarding Company, a New Jersey common carrier engaged in the overland carriage of cargo, for the transportation of the six cartons of equipment to the overseas carrying vessel, Farrell Lines' S.S. African Sun, at Pier 5 in Brooklyn, New York. Hermann accepted the goods for carriage pursuant to a "clean" bill of lading dated August 6, 1975, and delivered them on August 7, 1975 to the premises of Lyons Transport, Inc. on Staten Island. Hermann in turn received a "clean" bill of lading for the goods which it transported to Lyons' Staten Island warehouse for storage until delivery by Lyons to the S.S. African Sun on August 14, 1975. Upon receipt of the cartons, Farrell issued a "clean", on-board bill of lading acknowledging that the shipment was in apparent good condition. Thereupon the cargo was shipped to East London.

Upon its arrival in South Africa, one carton of the shipment was observed to be torn and, accordingly, an immediate examination was conducted in the harbor area of East London. The examination revealed that pilferage had taken place and that some of the original contents had been replaced with stones. The carton was then resealed and the consignment was carried by rail and road vehicle to Tatlow & Pledger's premises where it arrived on September 22, 1975. It was then discovered that all the cartons had been tampered with and that extensive pilferage had taken place in all but one. The cartons had been opened from the bottom and resealed with such skill that the damage went undetected until the shipment was unpacked. Stones and paper had been used to weigh down the cartons in place of the goods. O. M. Oppler & Co., marine surveyors, were called in to survey the damaged cargo and submitted a four-page report with photographs detailing the nature of the pilferage. The invoice value of the stolen goods totalled $3,622.90. This amount is fully documented. The only other evidence of the value of the goods is the land cost which amounted to R4,615.42 in South African currency and is evidenced by a statement of claim made by Tatlow & Pledger upon the owners of the S.S. African Sun. (Exhibit 22). It was

---

1. Defendants objected to the admissibility of various exhibits proffered by plaintiff. Since I did not rely on any of those allegedly objectionable exhibits in reaching my decision, I need not pass on their admissibility at this time.

the surveyor's opinion that the pilferage took place at some point prior to the loading of the goods in New York.

■ It appears clear that the pilferage occurred somewhere between the consignor's premises and the dock in South Africa. In a case such as this, where evidence as to the point of damage is somewhat vague, presumptions play a vital part in sorting out the liability, if any, of the various parties. Plaintiff has established that the cargo was delivered to the initial carrier in good condition and that the goods were at all times carried under clean bills of lading. Thus, I must examine what presumptions arise as a result of such a showing and whether or not they have been successfully rebutted by any of the defendants.

■ Beginning with the ocean carrier, Farrell, I note that the Carriage of Goods By Sea Act, 46 U.S.C. § 1303(4), ["COGSA"] provides that a bill of lading showing the apparent good order and condition of the merchandise constitutes *prima facie* evidence that the goods were in good condition at the time of delivery to the ship. Reference to the "apparent good condition", however, bears only upon the external condition of the goods. *See United States v. Lykes Brothers Steamship Co.,* 511 F.2d 218 (5th Cir. 1975). , *See also, Vana Trading Co., Inc. v. S.S. "Mette Skou",* 556 F.2d 100, 103 n.4 (2d Cir. 1977). Thus, it appears that only as to the one torn carton, the outward appearance of which was discrepant with the bill of lading, has plaintiff made out a *prima facie* case and shifted the burden to Farrell to show an absence of negligence. With regard to the remaining five cartons in which pilferage went undetected until unpacking, plaintiff has the burden of proving that the pilferage occurred as a result of Farrell's lack of due care. This plaintiff has utterly failed to do. Moreover, even had it succeeded in shifting the burden to Farrell, any inference of negligence has been rebutted by virtue of the nature of the pilferage. The heavy stones used to replace the stolen goods would simply not be available on board an ocean-going vessel. Accordingly, since defendant has sustained the burden of rebutting any inference of negligence and since plaintiff has submitted no affirmative evidence of negligence on the part of Farrell, judgment will enter in Farrell's favor.

■ I turn next to the claim against Hermann which is not governed by the provisions of the COGSA but rather by the common law of carriers as codified by the Interstate Commerce Act, 49 U.S.C. § 20(11) made applicable to motor vehicle carriers by 49 U.S.C. § 319. Under these provisions, plaintiff makes out a *prima facie* case against a common carrier by establishing delivery of the cargo to the carrier in good condition and its arrival in damaged condition. *Jersey Central Power and Light Company v. Westinghouse Electric Corporation,* 38 A.D.2d 283, 328 N.Y.S.2d 789, 792 (1972). This presumption shifts to the carrier the burden of proving that the damage was brought about by causes for which it is not responsible. Moreover, in the case of multiple carriers, the initial carrier is liable for loss of property caused by it or a subsequent carrier. 49 U.S.C. § 20(11) (Carmack Amendment). *See also, Adams Express Co. v. Croninger,* 226 U.S. 491, 504, 33 S.Ct. 148, 57 L.Ed. 314 (1912).

In the case at bar, the skillful nature of the pilferage tends to exonerate Hermann since it suggests that more than a short overland carriage was necessary for its accomplishment. Yet, by virtue of its status as initial carrier, Hermann must respond for any damage caused by Lyons. Moreover, the bill of lading between Spalding and Hermann provided for overland carriage to the S.S. African Sun and not to Lyons' Staten Island warehouse. Since there is nothing to suggest that Hermann had authority to make Lyons an intermediate carrier, Hermann's liability for Lyons' negligence, if any, may also arise by virtue of common law agency principles. It is, of course, true that if the loss was caused by Lyons, Hermann may recover from Lyons the amount it is required to pay the consignee. 49 U.S.C. § 20(12).

I, thus, turn to the question of Lyons' liability. As indicated above, a *prima facie* case is made out against a carrier by establishing that cargo was delivered to the carrier in good condition and that it arrived at its destination in damaged condition or did not arrive at all. A "clean" bill of lading is *prima facie* evidence that the merchandise was shipped in good condition. *United States v. Mississippi Valley Barge Line Co.*, 285 F.2d 381 (8th Cir. 1960). Although the bills of lading in the instant case aver only to the "apparent" good condition of the cargo, it has been successfully established that the goods left Chicopee, Massachusetts intact and that they arrived at Lyons' premises in the same good condition. Thus, the burden shifts to Lyons to establish its freedom from liability.

There are five common law exceptions to liability in a situation such as this: (a) an act of God; (b) the public enemy; (c) the act of the shipper; (d) public authority; or (e) the inherent vice or nature of the goods. *Missouri Pacific R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). Lyons has failed to even suggest that any of these exceptions apply. Thus, as the last carrier to handle the cargo, and as its bailee for a week-long period which afforded the thief or thieves ample opportunity to accomplish the skillful pilferage, Lyons will be presumed the responsible party. Accordingly, it must respond to Hermann in damages.

It remains for me to ascertain the amount of damages established. Plaintiff, in its Complaint seeks $9,000.00 for which there appears to be no basis in fact. The invoice value of the lost goods is $3,622.90, while the insured value in South African currency is R5952.29. Plaintiff asserts that this latter amount is the amount to which it is entitled but has presented no authority or reason for this claim other than its conclusory remark that "insurance companies do not pay unfounded claims." Plaintiff's Post Trial Memorandum at 7. This is clearly not a viable basis for awarding damages.

It is true, as defendants assert, that the ordinary measure of damages in a case such as this is the price the property would have brought in the market at its destination point less freight charges. *The Ansaldo San Giorgio I v. Rheinstrom Bros. Co.*, 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016 (1934). However, where, as here, the market value has not been shown, and another measure of damages is available, I do not believe it improvident to adopt that alternate means of determining damages. *See, e. g., Dixie Plywood Co. v. S. S. Federal Lines*, 404 F.Supp. 461 (S.D.Ga.), *aff'd* 525 F.2d 691 (5th Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2174, 48 L.Ed.2d 798 (1975). In this case we know that the invoice value of the lost goods at the point of shipment is $3,622.90. Accordingly, plaintiff is entitled to a judgment in that amount.

Settle judgment on seven (7) days' notice.