**PACOL (CANADA) LIMITED, Plaintiff,**

**v.**

**M/V MINERVA, et al., Defendants.**

**No. 79 Civ. 7033 (CBM).**

United States District Court,
S. D. New York.

Jan. 16, 1981.

Mendes & Mount by Louis M. Rohrberg, New York City, for plaintiff.

Cichanowitcz & Callan by Michael J. Carcich, New York City, for defendants.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, District Judge.

Plaintiff, Pacol (Canada) Limited, seeks recovery for damage to a shipment of 2,175 bags of cocoa beans carried from Ilheus, Brazil, to Philadelphia aboard the M.V. Minerva. Plaintiff claimed that a total of 1,494 bags constituting 197,514.122 pounds of cocoa beans were damaged en route by direct contact with seawater which entered the hold through defective McGregor hatch covers and by defendants' commingling of heavily wetted bags with sound bags on the pier after outturn. The court, after trial, found for plaintiff as to its claims and the court's findings in this respect were set forth orally on the record.

It was undisputed that some portion of the shipment of beans was damaged at outturn in Philadelphia. However, defendants contend that only 1,175 bags were damaged at the time of delivery and that any additional damage was due to the commingling of sound and damaged bags by plaintiff's trucker after the bags were delivered to the trucker. Plaintiff's trucker noted damage only on the delivery receipt for Bill of Lading No. 1 which covered 1,175 bags and did not note damage on the delivery receipt for Bill of Lading No. 3 which covered the remaining 1,000 bags. Defendants argue that the trucker's failure to note damage on the delivery receipt for 1,000 bags creates the presumption that these bags were delivered in good condition.

▉ Under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1303, plaintiff had the initial burden of proving receipt of the goods by the carrier in good condition and delivery at destination in bad condition. Once a prima facie case has thereby been established, the burden shifts to the carrier to prove that the loss was attributable to one of the COGSA exceptions. 46 U.S.C. § 1304(2); Nissho-Iwai Co., Ltd. v. M/T Stolt Lion, 617 F.2d 907, 911–912 (2d Cir. 1980); Demsey and Associates v. S.S. Sea Star, 461 F.2d 1009, 1114–1115 (2d Cir. 1972). Once the carrier has established an exception, as the carrier did in this case by showing a peril of the sea exception, § 1304(2)(c), the burden shifted to plaintiff to show that there were concurrent causes of loss in the fault and neglect of the carrier. Vana Trading Co. Inc. v. S.S. "Mette Skou", 556 F.2d 100 (2d Cir.), cert. denied, 434 U.S. 892, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977). This the plaintiff did by showing that the rubber gaskets around the hatch covers were defective as set forth orally on the record after the liability trial. Once the plaintiff has sustained this burden of showing some concurrent fault, the burden shifts to the carrier to show what portion of the loss is attributable to the § 1304(2) exception and which is attributable to its demonstrated fault. Vana Trading Co., Inc. supra. Here the carrier has failed to make this required apportionment.

Moreover, plaintiff showed that the damage to all 1,494 bags of cocoa beans resulted from wetting. Plaintiff's surveyor's report indicated that some of the bags were wetted by coming into contact after outturn with other bags which were heavily wetted by seawater during the voyage. Plaintiff showed that defendants negligently commingled damaged bags with sound bags on the pier. Plaintiff's surveyor testified that it was more likely that the additional wetting after outturn resulted from the commingling of bags on the pier by defendants rather than from commingling in plaintiff's trucks. Thus, plaintiff established a prima facie case that the total damage was due to defendant's negligence and rebutted any presumption created by plaintiff's trucker's failure to note damage on the delivery receipt for 1,000 bags. Defendants have not met their burden of proving that some portion of the damage was due to negligence on the part of plaintiff.

▉ The court next considers the measure of the value of the damaged beans. With respect to the measure of damages, the long-established and ordinary rule is that

"damages for injury to cargo while in the possession of a carrier are to be com-

puted at the difference between the fair market value of the cargo at destination in the condition in which it would have arrived but for the carrier's fault and its market value in the condition in which by reason of such fault it did arrive."

*Interstate Steel Corp. v. S.S. "Crystal Gem,"* 317 F.Supp. 112, 121 (S.D.N.Y.1970); *St. Johns NF Shipping Corp. v. S.A. Companhia Geral,* 263 U.S. 119, 125, 44 S.Ct. 30, 68 L.Ed. 201 (1923); *Encyclopedia Britannica, Inc. v. S.S. Hong Kong Producer,* 422 F.2d 7, 18 (2d Cir. 1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970); *Pioneer Import Corp. v. The Lafcomo,* 159 F.2d 654, 655 (2d Cir.), *cert. denied,* 331 U.S. 821, 67 S.Ct. 1310, 91 L.Ed. 1838 (1947); *Weirton Steel Co. v. Isbrandtsen-Moller Co.,* 126 F.2d 593, 594 (2d Cir. 1942). The Court of Appeals for the Second Circuit has recognized that this rule is "obviously the right measure where the [cargo owner] buys the goods for resale." *Weirton Steel Co., supra,* 125 F.2d at 594. The rule is not altered by the provision of § 1304(5) of COGSA that "[i]n no event shall the carrier be liable for more than the amount of damage actually sustained."

■ The primary purpose of these standards is to indemnify the plaintiff for its loss due to the carrier's fault, or to make the plaintiff whole.

"If the [cargo had been delivered in good condition, its worth to the buyer would have been determined by the market price at the port of destination. . . . To have held otherwise would have required the carrier to pay a price for the damaged goods which was more than the worth of the goods in their undamaged state. The carrier is not and should not be the guarantor of the ups and downs of commodity prices."

*A. L. Holden v. S. S. Kendell Fish,* 395 F.2d 910, 912–913 (5th Cir. 1968).

■ The fair market value rule, however, is not the sole method of ascertaining the cargo owner's loss. It has been discarded in exceptional cases, such as where there exists no market value at destination or where there is available a more accurate means of computing the loss. *Dixie Plywood Co. v. S.S. Federal Lakes,* 404 F.Supp. 461 (S.D.Ga.1975), *aff'd,* 525 F.2d 691, *cert. denied,* 425 U.S. 974, 96 S.Ct. 2174, 48 L.Ed.2d 798 (1976); *Santiago v. Sea-Land Service, Inc.,* 366 F.Supp. 1309 (D.P.R.1973).

"The assessment of damages in particular situations has called for the development of lesser rules, the use of common sense and the creation of exceptions, all to the end that the shipper whose property has been affected be made whole."

*Santiago v. Sea-Land Service, Inc., supra,* 366 F.Supp. at 1314.

Plaintiff contends that its damages should not be measured by the fair market value at destination since plaintiff had contracted for the sale of the entire shipment of cocoa beans at prices above the cost, insurance, freight (CIF) cost and would have realized a net profit if the cargo had arrived undamaged. Plaintiff, however, claims that it is unable to accurately forecast its lost profits. Plaintiff substituted cocoa beans from other sources to fulfill its contractual obligations, but argues that this substitution caused a substantial alteration of plaintiff's position in the cocoa market which cannot be accurately measured. Plaintiff proposes that the court use only the CIF cost of the beans as an alternative to the CIF cost plus lost profits as a reference point in calculating its damages.

■ It is proper to award the plaintiff anticipated profits where it has been satisfactorily shown that this amount was in fact lost and was not realizable by substitution of other goods. *Santiago, supra,* 366 F.Supp. at 1316; *Dixie Plywood, supra,* 404 F.Supp. at 465–466. Courts have also used the invoice price of the cargo as an alternative reference point in determining value when the fair market value at destination was uncertain or not proved. *C. Itoh Co. v. Hellenic Lines, Ltd.,* 470 F.Supp. 594, 598 (S.D.N.Y.1979); *Tatlow & Pledger, Ltd. v. Hermann Forwarding Co.,* 456 F.Supp. 351 (S.D.N.Y.1978).

■ In the instant case, plaintiff has not sustained its burden of proving that it

actually lost profits as a result of defendants' negligence. While plaintiff has shown that it contracted for the sale of the beans at prices above CIF cost, plaintiff was able to fulfill all of its contractual obligations through the sale of substituted beans and realized these anticipated profits. Nor has plaintiff shown that CIF cost is a more accurate measure of the damages it allegedly sustained due to the alteration of its market position than fair market value at destination. The court therefore concludes that the fair market value rule, which ordinarily applies when the owner of damaged cargo purchased the goods for resale to a customer, should apply in this case.

Plaintiff is entitled to damages measured by the fair market value of cocoa beans at destination, less salvage. The fair market value of cocoa beans at Philadelphia at the time of delivery was $1.58 per pound as determined by a canvassing of the market by plaintiff's surveyor and as reported by the New York Cocoa Exchange. Plaintiff is also entitled to reasonable and necessary costs associated with sorting and reconditioning the beans. *Interstate Steel Corp. v. S.S. "Crystal Gem", supra,* 317 F.Supp. at 121. Plaintiff incurred reconditioning costs at Toronto of $5,359.00 and a survey fee at Philadelphia of $1,427.79. The total amount of plaintiff's damages is computed as follows:

```
fair market value of beans
(197,514.122 lbs X $1.58/lb.) ......$312,072.29
less salvage ................— 120,967.82
net fair market value loss ...... =$191,104.47
reconditioning costs .......... +   5,359.00
survey fee ................. +   1,427.79
      TOTAL DAMAGES    =$197,891.26
```

In addition, plaintiff is entitled to recover prejudgment interest, computed from the date of arrival of the damaged cargo in Philadelphia to the date of entry of final judgment, and the costs of the action. While the allowance or disallowance of interest is within the discretion of the court, "allowance of interest is the general rule and ... disallowance is supportable only in the face of 'exceptional circumstances'." *O'Donnell Transp. Co. v. City of New York,* 215 F.2d 92, 95 (2d Cir. 1954). There are no such exceptional circumstances in the instant action.

SO ORDERED.