OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


     The Limited Stores, Inc., Appellant and Cross-Appellee, v.
Pan American World Airways, Inc., Appellee and Cross-Appellant;
Sea Insurance Co. et al., Appellees.
Civil procedure -- In a case subject to provisions of Warsaw
     Convention, prejudgment interest may be awarded by the
     fact-finder as an element of compensation, when.
     [Cite as The Limited Stores, Inc. v. Pan American World
Airways, Inc. (1992),     Ohio St.3d    .]
     (No. 91-582 -- Submitted April 14, 1992 -- Decided
September 23, 1992.)
     Appeal from the Court of Appeals for Franklin County, No.
89AP-502.
     On November 24, 1985, Pan American World Airways, Inc.
("Pan Am"), appellee and cross-appellant, accepted delivery in
Paris, France of approximately twenty thousand articles of
women's apparel for air shipment to New York.  The apparel
consisted of floral denim jeans, skirts and overalls that had
been manufactured under the Americanino brand in Italy and
purchased by The Limited Stores, Inc. ("The Limited"),
appellant and cross-appellee.
     The shipments arrived at John F. Kennedy Airport in New
York on November 24 and 25, 1985.  The Pan Am inside storage
facilities were apparently full, so the boxes containing the
clothing were left stacked on pallets in an outside storage
area during a rainfall.  When The Limited's agent, A.W. Fenton
& Co., Inc., picked up the garments on November 26, 1985, a
notation was made on the delivery receipt that the goods were
"very wet."
     On November 26, 1985, Pan Am notified Chubb Group of
Insurance Companies ("Chubb Group"), the manager for
defendant-appellee Sea Insurance Company Ltd. ("Sea
Insurance"), its insurance carrier, of the damaged shipment.
A.W. Fenton & Co., Inc. then delivered the garments by truck to
The Limited's corporate headquarters in Columbus, Ohio.  Chubb
Group subsequently retained defendant-appellee Intermodal
Technical Services, Inc. ("ITS"), a wholly owned subsidiary of
defendant-appellee GAB Business Services Inc. ("GAB"), to
survey the damaged goods.

An ITS employee, defendant-appellee Robert Maldeis, inspected the goods on December 2, 1985 and told The Limited's personnel that the shipment appeared to be a total loss. After Sea Insurance refused to pay The Limited's claimed loss, The Limited aired out the garments and in January distributed those that were salvageable to its retail stores. By that time, however, the Christmas selling season was virtually over, and the transitory fashion trend these garments were designed to meet had already peaked. Although The Limited immediately marked down the price of the garments upon placement in their stores, consumer interest in, and sales of, these garments were minimal. In preparation for the spring selling season, The Limited then recalled the garments as part of a general recall of inventory. Some of the recalled garments were sold to a distributor in a secondary market; others were donated to charity.

The Limited brought this action claiming it was entitled to recover damages from Pan Am for its negligence and from Sea Insurance, ITS, GAB, and Maldeis (collectively the "insurers and agents") on the basis of promissory estoppel. On November 28, 1988, the cause came on for a jury trial. After the close of the Limited's case, GAB, ITS, Sea Insurance and Maldeis moved for a directed verdict on The Limited's promissory estoppel claim. The trial court subsequently granted the motion.

The trial court also granted Pan Am's motion for a partial directed verdict restricting The Limited's potential recovery to the wholesale rather than retail value of the garments. Although the court eventually instructed the jury to consider the fair market value of the goods in its deliberations and did not, in those instructions, restrict The Limited's potential recovery to the wholesale value of the garments1, the court precluded The Limited's counsel from arguing to the jury that the retail value of the garment was the proper measure of the fair market value of the garments, effectively limiting The Limited's potential recovery.

The jury found Pan Am liable, and in response to a special interrogatory found that thirty percent of the garments had been damaged by rainfall. The jury awarded The Limited $141,974.20 on its claim against Pan Am, to which sum the trial court added prejudgment interest. Pan Am's subsequent motion for judgment notwithstanding the verdict was denied. Upon an appeal by The Limited challenging both the jury's verdict and the directed verdict, and a cross-appeal by Pan Am concerning the trial court's assessment of prejudgment interest, the court of appeals affirmed in full the judgment of the trial court. In so ruling, the court held that although it was error for the trial court to direct a verdict restricting the fair market value of the garments to their wholesale value, the error was nonprejudicial.

The cause is now before this court upon the allowance of a motion and cross-motion to certify the record.

Schwartz, Kelm, Warren & Rubenstein, Russell A. Kelm and John A. Gleason, for appellant and cross-appellee.
Vorys, Sater, Seymour and Pease, Michael G. Long and Patricia A. Davidson, for appellee and cross-appellant.

Hamilton, Kramer, Myers & Cheek, Austin P. Wildman and Thomas J. Conkle, for appellee Sea Insurance Company.

Roetzel & Andress and John P. Mazza, for appellees GAB Business Services, Inc. et al.

Per Curiam.   This case concerns the liability of an air carrier for damage to an international shipment of retail goods.  By that description, the case seems deceptively simple.  The issues this case raises, however, include the applicability of the law of two states and an international treaty under a complicated set of facts.  We address each of the issues raised by appellant and cross-appellant in turn.

I

We first must determine what substantive law applies to the issues in this case.  As both the trial court and the court of appeals correctly concluded, the "Convention for Unification of Certain Rules Relating to International Transportation by Air" commonly referred to as the "Warsaw Convention ("Convention")2 provides the basic legal framework within which the dispute between Pan Am and The Limited is to be decided.  The Convention was designed to provide uniform, world-wide rules of liability for losses sustained by air passengers and shippers of goods during international transportation by air.  Reed v. Wiser (C.A.2 1977), 555 F.2d 1079, 1090, certiorari denied (1977), 434 U.S. 922, 98 S.Ct.399, 54 L.Ed.2d 279.  As specified in Article 1 of the Warsaw Convention, the Convention applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire."3  Article 18 of the Convention provides that a carrier shall be liable for damage to goods occurring during "transportation by air" of those goods.

The effect of the Warsaw Convention is place liability for damage or personal injury on the air carrier unless the air carrier shows that it took "all necessary measures to avoid the damage."  Article 20 of the Convention.  In exchange for the carrier bearing that heavy burden, the Convention limits the amount of damages an injured party can collect for its damage or injury.  In the case of damaged goods, Article 22(2) of the Convention limits the airline's liability to two hundred fifty French francs per kilogram of cargo unless the consignor has made a special declaration of the value of the cargo and paid an additional sum based on that value.  Additionally, if it can be proven that the carrier caused the damage by its willful misconduct, then under Article 25(1) of the Convention, the liability limits of the Convention do not apply.

It is undisputed that The Limited did not make a special declaration as to value and pay an additional sum for coverage.  Whether Pan Am engaged in willful misconduct, however, was an issue for the jury, and whether the jury was properly instructed on that issue is discussed in detail in part III below.

The Warsaw Convention, as an international treaty to which the United States is a party, preempts state common carrier law with respect to those issues within its purview.  Conflict of law principles are not relevant to the interpretation of the Convention; rather, legal interpretation must be gleaned from the four corners of the treaty.  Saiyed v. Transmediterranean

Airways (D.C.Mich.1981), 509 F.Supp. 1167, 1169.

The Convention, however, does not specifically address all the issues involved in the dispute between Pan Am and The Limited. Indeed, in this context the Convention merely provides for a cause of action against Pan Am and specifies the method of calculating Pan Am's maximum potential liability if it fails to prove that it took all necessary steps to prevent the damage. The Convention does not address, for example, how damages are calculated, nor does it define a standard for willful misconduct. Thus, in order to provide a legal foundation for those areas not addressed within the four corners of the Convention we must look to other sources of law.

We first note that an action brought under the Warsaw Convention cannot be classified as either a tort action or a contract action. Indeed, an action brought pursuant to the Convention, like other common carrier actions under federal law, incorporates elements of both tort and contract actions. Compare Article 21 of the Convention (permitting the application of contributory or comparative negligence principles if forum law so allows) with Article 23 of the Convention (precluding a contract that incorporates a provision further limiting the carrier's liability). Thus, with respect to the dispute between Pan Am and The Limited, while we may properly rely upon cases from any jurisdiction, state or federal, that have interpreted the Warsaw Convention and its terms, we may also rely upon federal common law in analogous carriage of goods cases to fill in the gaps that may still remain in the application of the Convention. Accord In re Air Disaster at Lockerbie, Scotland on Dec. 21 1988 (C.A.2, 1991), 928 F.2d 1267 (federal common law of torts applies in construing Warsaw Convention). Although we may find it instructive to look the law of New York and Ohio to interpret certain terms that the the Convention does not define, we are not bound to do so.[4]

With respect to the dispute between The Limited and the insurers and agents, the Convention in not applicable, because that portion of the case does not involve damage caused to the goods during air transportation. See Article 31 of the Convention. As to this portion of the case, we conclude that Ohio law applies. An action grounded in promissory estoppel is an action in contract, and choice-of-law analysis indicates that Ohio has bears the most significant relationship to the dispute between the parties. See Gries Sports Enterprises, Inc. v. Modell (1984), 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807, syllabus (applying Section 188, 1 Restatement of the Law 2d [1971], Conflict of Laws, to resolve conflict-of-law questions when parties to a contract do not specify the law to be applied).

Having resolved the question of the law to be applied in this action, we now turn to the propositions of law set forth by the parties.

II

The Limited urges as its first proposition of law that "[a] retail seller of clothing is entitled to recover the retail value of goods damaged in transit, when cover with comparable merchandise is not possible." Flowing from the proposition of law is The Limited's argument that the trial court erred in directing a verdict for Pan Am capping the

damages at the wholesale value of the goods and precluding The Limited from arguing that the proper measure of its damages was the retail value of its goods. We agree that the trial court erred in directing the verdict and that the jury should have considered the retail value of the goods in its deliberations. We do not, however, agree that, as a matter of law, the proper measure of The Limited's damages is the retail value of the entire shipment.

The general rule for calculating damages in common carrier cases is that the shipper is entitled to the difference between fair market value of the goods as received and fair market value of the goods in the condition they would have been in had they not been damaged. Pacol (Canada) Ltd. v. M/V Minerva (S.D.N.Y.1981), 523 F.Supp. 579, 581-582; and C. Itoh & Co. (America), Inc. v. Hellenic Lines, Ltd. (S.D.N.Y.1979), 470 F.Supp. 594, 598. In this respect, the trial court properly instructed the jury.

By further defining, through directed verdict, the term "fair market value" to mean only the wholesale value of the shipment less salvage, the trial court erred to the prejudice of The Limited and improperly precluded the jury from determining, based upon all the evidence presented at trial, what it believed The Limited's damages to be. Under the facts of this case, where a retail establishment has arranged for a shipment of goods that have a short sale life and where cover is impossible, a jury should be permitted to consider whether a portion of the goods would have sold had they arrived in good condition in time to meet consumer demand and to determine the price at which those goods would have sold, provided the retail establishment has presented sufficient evidence to put those considerations in issue.

Upon review of the record, we conclude that The Limited presented adequate evidence to demonstrate that it would have sold at least a portion of the goods at a profit had they arrived undamaged. The Limited introduced documentary and testimonial evidence of the sales history as well as the successful test marketing of similar products. Sales records introduced by The Limited at trial indicated that products similar to those which had been damaged were selling on a two to three week rate of supply in early December 1985. Additionally, The Limited provided evidence of the retail price of comparable items and expert testimony concerning the retail value of the goods in question. The jury should have been permitted to assess The Limited's evidence to determine the fair market value of the goods in view of the price for which they would have been offered for sale and the testimony and documentary evidence of the sale of comparable items. Accordingly, we remand this portion of the case to the trial court for a new trial on the issue of The Limited's damages.

III

Next we are asked to reverse and remand this action for error claimed in the jury instruction given by the trial court concerning willful misconduct. Pursuant to Article 25(1) of the Warsaw Convention, the Convention's limitation of liability does not apply if the damage is caused by the carrier's willful misconduct. The Limited contends that the trial court should have instructed the jury that a finding of intent on the part

of Pan Am was unnecessary to determine that Pan Am had acted willfully.

In order to find reversible error, we would have to conclude that the instruction as a whole did not clearly and fairly express the law, and that The Limited's substantial rights were prejudiced. Ohio Farmers Ins. Co. v. Cochran (1922), 104 Ohio St. 427, 135 N.E. 537. Reading the instruction that was given to the jury as a whole, we find that it was consistent with similar instructions and definitions approved in other Warsaw Convention cases. See Koninklijke Luchtvaart Maatschappij N.V. KLM Royal Dutch Airlines Holland v. Tuller (C.A.D.C.1961), 292 F.2d 775, 778, certiorari denied (1961), 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136; American Airlines, Inc. v. Ulen (C.A.D.C.1949), 186 F.2d 529, 533; Maschinenfabrik Kern, A.G. v. Northwest Airlines, Inc. (N.D.Ill.1983), 562 F.Supp. 232, 240; and Grey v. American Airlines, Inc. (C.A.2, 1955), 227 F.2d 282, 285. We thus cannot conclude that the instruction did not clearly and fairly express the law, and we find no error in the instruction given by the trial court.

Having concluded that the trial court did not err in its instruction, the jury's finding that Pan Am did not engage in willful misconduct must stand. Accordingly, upon retrial of the damages issue, The Limited's potential recovery is capped by the liability limitation provisions of the Warsaw Convention. The limit of two hundred fifty francs per kilogram has been interpreted to be the equivalent of $9.07 per pound. Trans World Airlines, Inc. v. Franklin Mint Corp. (1984), 466 U.S. 243, 104 S.Ct. 1776, 80 L.Ed.2d 273. Based upon a shipment weight of 27,117 pounds, the Limited's maximum potential recovery is thus $245,951.19. In the event that the jury's determination of The Limited's damages exceeds this amount, the trial court must reduce the award to the Convention limit.

IV

The Limited also asks this court to reverse the trial court's granting of a directed verdict in favor of defendants-appellees Robert Maldeis, Intermodal Technical Services, GAB Business Services and Sea Insurance Company. The Limited's action against these appellees is asserted on a theory of promissory estoppel based on a statement allegedly made by Maldeis when he inspected the garments after their arrival at The Limited's warehouse in Columbus, Ohio.

The Limited claims that Maldeis informed its representatives and employees on December 2, 1985, the time of his first inspection of the goods, that the shipment appeared to be a total loss and that the insurer would take care of the loss. The trial court directed a verdict in favor of these appellees, finding there was no evidence that Maldeis intended to induce reliance by his statement or that The Limited reasonably relied on any such statement.

In Talley v. Teamsters Local No. 377 (1976), 48 Ohio St.2d 142, 146, 2 O.O.3d 297, 299, 357 N.E.2d 44, 47, this court adopted the rule of Section 90 of the Restatement of Contracts 2d concerning promissory estoppel. The Restatement provides in part:

"(1) A promise which the promisor should reasonably

expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. * * *"  1 Restatement of the Law 2d, Contracts (1981) 242, Section 90.  See, also, McCroskey v. State (1983), 8 Ohio St.3d 29, 30, 8 OBR 339, 340-341, 456 N.E.2d 1204, 1205.

Maldeis admitted that his preliminary survey of the garments led him to believe that the shipment was a total loss, but he further testified that the statement he made to The Limited representatives was conditioned upon his further inspection which was to have been made after United States Customs cleared the shipment.  As both courts below found, there is an abundance of testimony in the record of The Limited's employees that the decision to reject the goods was made independently of any statements made by Maldeis.

A motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party.  Civ.R. 50(A)(4); Crawford v. Halkovics (1982), 1 Ohio St.3d 184, 185-186, 1 OBR 213, 214, 438 N.E.2d 890, 892.  Based upon the evidence, the trial court found and the court of appeals confirmed that reasonable minds could come to only one conclusion and that conclusion was adverse to The Limited.  We agree.

V

In the first issue it raises on cross-appeal, Pan Am contends that The Limited lacked standing to sue an international air carrier because it was neither consignor nor consignee of an international shipment of cargo.

Article 15(1) of the Warsaw Convention states:

"Articles 12, 13, and 14 shall not affect either the relations of the consignor and the consignee with each other or the relations of third parties whose rights are derived either from the consignor or from the consignee."

Article 30(3) of the Convention provides:

"As regards baggage or goods, the passenger or consignor shall have a right of action against the first carrier, and the passenger or consignee who is entitled to delivery shall have a right of action against the last carrier, and further, each may take action against the carrier who performed the transportation during which the destruction, loss, damage, or delay took place.  These carriers shall be jointly and severally liable to the passenger or to the consignor or consignee."

Pan Am insists that these provisions permit only the consignor or consignee named on the air waybill to sue for damage to goods.  We disagree.

In Leon Bernstein Commercial Corp. v. Pan American World Airways (1979), 72 App.Div.2d 707, 421 N.Y.S.2d 587, the defendant therein sought to similarly limit standing under the Warsaw Convention to only the consignor or consignee.  Finding that the plaintiff therein derived its rights from the consignor, and further holding that construing the Warsaw Convention in the manner proposed would defeat the rights of the true owner of the cargo, the court rejected the defendant's

standing argument.  We similarly reject Pan Am's reasoning and hold that The Limited had standing in this action.  The Limited's rights are derived from its agent, the consignee A.W. Fenton & Co. ("Fenton"), named on the Pan Am waybill, and it is not disputed that Fenton received and forwarded goods purchased by The Limited.

## VI

Pan Am also challenges the trial court's award of prejudgment interest, contending that the Warsaw Convention does not permit such an award.

Although there is a split of authority between the Second and Fifth United States Circuit Courts of Appeals concerning the award of prejudgment interest under the Warsaw Convention when the amount of damages exceeds the damages limitation, we find no case that stands for the proposition that prejudgment interest cannot be awarded as an element of compensation if properly presented to the jury and if the sum of the prejudgment interest and the damages awarded does not exceed the damages limitation.  Indeed the chief case relied upon by Pan Am, O'Rourke v. Eastern Air Lines, Inc. (C.A.2, 1984), 730 F.2d 842, suggests that it is proper to award prejudgment interest in a Warsaw Convention action if the damages cap is not exceeded.

Although we do not adopt the position espoused by the Fifth Circuit that prejudgment interest may be awarded in the discretion of the trial judge even if the damages limitation is exceeded, Domangue v. Eastern Air Lines, Inc. (C.A.5, 1984), 722 F.2d 256, we agree with that court's conclusion that the preeminent purpose of the Convention was to fix definite and uniform limits on the cost to airlines of damages sustained by their customers.  As such, prejudgment interest should in this context should be presented to the jury as an element of damages, with the understanding that the ultimate award available under the Convention will be limited to a fixed, uniform level.

Thus, we hold that in a case subject to the provisions of the Warsaw Convention, prejudgment interest may be awarded by a fact-finder as an element of compensation if the sum of the damages awarded and the prejudgment interest on those damages is less than the damages limitation imposed under the provisions of the Convention.

For the reasons set forth above, the cause is remanded for a new trial on the issue of damages, with instructions to the trial court to limit The Limited's maximum recovery to the amount of damages specified by the Warsaw Convention.  In all other respects the judgment of the court of appeals is affirmed.

> Judgment affirmed in part
> and reversed in part.

Moyer, C.J., Sweeney and Wright, JJ., concur.

Holmes and Bryant, JJ., concur in part and dissent in part.

Douglas and Resnick, JJ., concur in part and dissent in part.

Thomas F. Bryant, J., of the Third Appellate District, sitting for H. Brown, J.

FOOTNOTES

1  The trial court instructed the jury on the issue of

damages as follows:

"If you find from the evidence that as a direct result of the wrongful act of the Defendant the property of The Limited Stores was damaged when delivered on November 27th, 1985, you should award as damages the difference between the fair market value of the goods if they had arrived undamaged and their fair market value in their damaged condition at that time.

"Fair market value is the price the goods would bring if offered for sale in the open market by an owner who desired to sell them, but was under no necessity or compulsion to do so, and when purchased by a buyer who desired to but was not -- was under no necessity or compulsion to do so, each having knowledge of the pertinent facts concerning the goods."

2  49 Stat. 3000, T.S. No. 876, 137 L.N.T.S.11, opened for signature on October 12, 1929, in Warsaw, Poland, entered into force for the United States, October 29, 1934, and is reprinted in Section 1502 note, Title 49, U.S. Code (1976 and Supp. 1992).

3  The Warsaw Convention applies only by agreement of the parties, not by operation of law.  B.R.I. Coverage Corp. v. Air Canada (E.D.N.Y.1989), 725 F.Supp. 133, 135.  A shipment's air waybill usually provides evidence of the parties' agreement to be governed by the Warsaw Convention.  In the case at bar, neither Pan Am nor The Limited now contest the Convention's applicability.

4  We note that had the Warsaw Convention not applied, we likely would have applied the law of New York with respect to the dispute between Pan Am and The Limited because New York has the more significant relationship to the contract for the carriage of goods.  Section 197, 1 Restatement of the Law 2d, Conflict of Laws (1971) 628.


Bryant, J., concurring in part and dissenting in part.  I concur in Part IV of the majority opinion which affirms the judgment of the trial court granting a directed verdict in favor of defendants-appellees Robert Maldeis, Intermodal Technical Services, GAB Business Services and Sea Insurance Company on The Limited's claim against them based on the theory of promissory estoppel.

I dissent from Parts I and II of the majority opinion and concur with the conclusion reached in Part III, but disagree with the majority's reasoning in reaching that conclusion.

                              I

I agree with so much of Part I of the majority opinion as holds that the Warsaw Convention applies to the dispute between The Limited and Pan Am.  I further agree that the Convention limits the amount which may be recovered by The Limited in this case.  I also agree that the Convention preempts state common law with respect to the issues within its purview, but the Convention does not address all issues involved in the dispute between The Limited and Pan Am.  I agree with the majority's conclusion that Ohio law applies to the dispute between The Limited and the insurers and agents.

I disagree with so much of Part I of the majority opinion as holds that federal common law is the substantive law to the applied to the dispute between Pan Am and The Limited in this case.  I do not agree that a state court can apply federal common law to a case brought pursuant to the Warsaw Convention

while ignoring its own law.  The majority recognizes that this court is free to consider the law of New York and Ohio concerning interpretation of certain terms not defined in the Convention, but then holds that it is not bound to do so.  I believe that this court is so bound.

In the case of Erie Railroad Co. v. Tompkins (1938), 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 1194, the Supreme Court held:

"Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.  * * *  There is no federal general common law."

A careful reading of the Convention reveals several issues to which state law is applicable.  Article 25(1) provides that the Convention's limitation of liability does not apply "if the damage is caused by his [the carrier's] wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct."  Article 28(2) states that procedural matters are to be governed by the law of the court in which the action is pending.  Article 29(2) states that "[t]he method of calculating the period of limitation [two years pursuant to Article 29(1)] shall be determined by the law of the court to which the case is submitted."  As noted by the majority, Article 21 provides that contributory or comparative negligence principles may be applied in accordance with the court's own law.

In addition to the language contained in the Convention, the "Order of the Civil Aeronautics Board Approving Increases in Liability Limitations of Warsaw Convention and Hague Protocal [sic]," adopted May 13, 1966, as part of the Montreal Agreement, provides that the damage limitation for wrongful death and personal injury is "$75,000 inclusive of legal fees, and, in case of a claim brought in a State where provision is made for separate award of legal fees and costs, a limit of $58,000 exclusive of legal fees and costs."  Order reprinted in Section 1502 note, Title 49, U.S. Code (1976 and Supp.1992).  This language together with the above-cited language contained in the Convention indicates that the law of the forum state is to be applied to certain issues.

The court of appeals correctly held that the substantive law of New York applies to the facts of this case, but it erred in relying on Section 146 of 1 Restatement of the Law 2d, Conflict of Laws (1971) 430.  Section 146 applies to actions for personal injury and this is clearly not such an action.

For purposes of the choice of law issue in this case, we should rely on Section 145 of the Restatement of Conflicts, which states that "the local law of the state which * * * has the most significant relationship to the occurrence and the parties * * *" should be applied.  Section 145(1) of the Restatement of the Law of Conflicts 2d 414.  Section 145(2) provides several factors to be considered in determining which state has the most significant relationship:

"(a)  the place where the injury occurred;

"(b)  the place where the conduct causing the injury occurred;

"(c)  the domicile, residence, nationality, place of

incorporation and place of business of the parties; and

"(d)  the place where the relationship, if any, between the parties is centered."

In this case, both the injury and the conduct causing the injury occurred in New York.  Pan Am is a New York corporation with its principal place of business in New York.  The Limited is a Delaware corporation with its principal place of business in Ohio.  A review of the record fails to disclose any evidence as to where the relationship between The Limited and Pan Am was centered.  It appears that the only connection Ohio has with Pan Am's portion of this transaction is the fact that The Limited's principal place of business is located here and the garments were ultimately transported to this state, although by an entity other than Pan Am.

Following the guidelines set forth in Section 145 of the Restatement of Conflicts 2d, it is apparent that New York has the most significant relationship to the occurrence and parties.  Accordingly, New York law should apply to this case.

II

I dissent from Part II of the majority decision reversing and remanding this cause to the trial court for new trial on the issue of The Limited's damages.  As stated previously, I would hold that the law of New York applies to the issues as between The Limited and Pan Am.  The parties cite both New York and Ohio law in their briefs, and the law of both states is essentially the same with respect to the damages issues presented for review.

Under New York law, the general rule for awarding damages for cargo is the difference between fair market value of the goods as received and fair market value of the goods in the condition they would have been in had they not been damaged. Pacol (Canada) Ltd. v. M/V Minerva (S.D.N.Y.1981), 523 F.Supp. 579, 581-582; and C. Itoh & Co. (America), Inc. v. Hellenic Lines, Ltd. (S.D.N.Y.1979), 470 F.Supp. 594, 598.

In this respect, New York and Ohio law are identical.  I believe the damages instruction given to the jury by the trial court correctly set forth this measure of damages.

The Limited's argument that it should be entitled to receive the retail value of the damaged garments simply because it is a retailer is, in my opinion, without merit.  In the Pacol case, supra, the plaintiff sought to recover lost profits because it had already contracted for the sale of the entire shipment of cocoa beans that were damaged by the carrier.  The court disallowed recovery for lost profits because the plaintiff was able to fulfill its contractual obligations through the sale of cocoa beans from other sources.  Pacol, 523 F.Supp. at 582.  The court further noted that the plaintiff was unable to accurately forecast its lost profits.  Id.  There is evidence in the record of the trial of the case sub judice which indicates that The Limited might have made sales of substitute merchandise to customers who otherwise were prospective buyers of the garments at issue here.

I would hold that the evidence presented by The Limited is insufficient to find, as it urges this court to do, that it would have sold all of the garments at full retail price. Damages for lost profits may be recovered only if proven with "reasonable certainty."  Kenford Co., Inc. v. County of Erie

(1986), 67 N.Y.2d 257, 502 N.Y.S.2d 131, 493 N.E.2d 234. The Limited not having proven its lost profits with reasonable certainty, I would affirm the judgment of the trial court.

### III

I concur in that portion of Part III of the majority opinion which affirms the jury's finding that Pan Am did not engage in willful misconduct. I would have made this finding upon different grounds, however. As discussed in Parts I and II, above, I would hold that New York applies to the damages issue and the question of whether Pan Am engaged in willful misconduct.

The Limited contends that the trial court should have instructed the jury that a finding of intent on the part of Pan Am was unnecessary to determine that Pan Am had acted willfully. Neither the parties nor the court of appeals mentioned New York law concerning the elements of willful misconduct. Instead, they relied on Ohio law, which does not require a finding of intent.

New York law differs from Ohio law concerning the elements of willful misconduct. The law of New York as it relates to willful misconduct within the terms of the Warsaw Convention clearly requires "a conscious intent to do or to omit doing the act from which harm results to another * * *." Goepp v. American Overseas Airlines, Inc. (1952), 281 A.D. 105, 111, 117 N.Y.S.2d 276, 281. See, also, Rymanowski v. Pan American World Airways, Inc. (App.Div.1979), 70 A.D.2d 738, 739, 416 N.Y.S.2d 1018, 1020; and Grey v. American Airlines, Inc. (C.A.2, 1955), 227 F.2d 282, 285, certiorari denied (1956), 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855.

Because the jury instruction concerning willful misconduct should have been based upon New York law, I would hold that the trial court's failure to instruct the jury that it need not find intent on the part of Pan Am was not error.

### IV

As to the cross-appeal, I concur that The Limited had proper standing to sue Pan Am, but find no basis to justify an award of prejudgment interest.

The trial court cited R.C. 1343.03(C) and Essex House v. St. Paul Fire & Marine Ins. Co. (S.D.Ohio 1975), 404 F.Supp. 978, as its authority under the circumstances for granting prejudgment interest.

If this be deemed an Ohio tort action to which R.C. 1343.03(C) might apply, the motion for prejudgment interest alleged neither the movant's good faith efforts nor the judgment debtor's failure to make a good faith effort to settle the claims in suit. The trial court held no hearing on motion and made no finding of Pan Am's willful misconduct. Thus, the requirements of R.C. 1343.03(C) were not met. Kalain v. Smith (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572; Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 543 N.E.2d 464.

In Essex House, the district court found an award of prejudgment interest justified by the need for adequate compensation to make the injured party whole. Essex House concerned an insurance contract claim calling for resort to equitable considerations, not as here a claim subject to limitation of damages by treaty.

Although Ohio common-law principles permit compensation

for the value of the lost use of money by an award for prejudgment interest, such considerations are properly included only in the jury's assessment and award of compensatory damages. See Hogg v. Zanesville Canal & Mfg. Co. (1832), 5 Ohio 410; and Lawrence R.R. Co. v. Cobb (1878), 35 Ohio St. 94.

Assuming arguendo that New York law applies, the procedural requirements of the applicable statute were not followed.

New York's CPLR, Section 5001, states in pertinent part:

"(a) Actions in which recoverable. Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

"(b) Date from which computed. Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

"(c) Specifying date; computing interest. The date from which interest is to be computed shall be specified in the verdict, report or decision. If a jury is discharged without specifying the date, the court upon motion shall fix the date, except that where the date is certain and not in dispute, the date may be fixed by the clerk of the court upon affidavit. The amount of interest shall be computed by the clerk of the court, to the date the verdict was rendered or the report or decision was made, and included in the total sum awarded."

The court of appeals, in considering the federal law issue, recognized the split of authority between the Second and Fifth United States Circuit Courts of Appeals concerning the award of prejudgment interest under the Warsaw Convention, and believing the better view and result to be found in Domangue v. Eastern Air Lines, Inc. (C.A.5, 1984), 722 F.2d 256, rather than that in O'Rourke v. Eastern Air Lines, Inc. (C.A.2, 1984), 730 F.2d 842, affirmed the award by the trial court. I would hold the appellate court's reliance on Domangue as authority for the award of prejudgment interest under the Warsaw Convention to be misplaced.

Domangue, was a wrongful death case subject to the provisions of the Montreal Agreement modifying the Warsaw Convention and expressly providing for prejudgment interest in cases to which the modification applies. The cargo case before us, on the other hand, is not subject to the modifications of the Montreal Agreement.

In Deere & Co. v. Deutsche Lufthansa Aktiengesellschaft (C.A.7, 1988), 855 F.2d 385, 391-392, a cargo case, the court observed that the Warsaw Convention's primary goal is to fix the air carriers' limit of liability on a per pound basis of the damaged cargo, not to fully compensate an aggrieved party absent an express contract provision for prejudgment interest. A reasonable construction of the Warsaw Convention prohibits an award of prejudgment interest unless willful misconduct by the

carrier can be found.

I would hold that prejudgment interest may be awarded only as expressly provided by the treaty or by contract of the parties and accordingly would reverse the award entered by the trial court.

Holmes, J., concurs in the foregoing opinion.

Alice Robie Resnick, J., concurring in part and dissenting in part. I concur in that part of the majority opinion remanding this cause for a new trial on the issue of damages, and I agree that Pan Am's liability upon remand is limited by Article 22(2) of the Warsaw Convention. However, there are several other issues in this case on which I do not concur with the majority; therefore, I dissent in part.

A

I dissent from Part IV of the majority opinion. I would reverse the trial court's granting of a directed verdict in favor of defendants-appellees Robert Maldeis, Intermodal Technical Services, GAB Business Services and Sea Insurance Company. After reviewing the record as it concerns The Limited's cause of action asserting promissory estoppel against those parties, I conclude that the trial court erred when it granted the motion for a directed verdict. When the evidence is construed most strongly in The Limited's favor, as the reviewing standard for a directed verdict requires, Civ.R. 50(A)(4), it becomes evident that reasonable minds could have reached a conclusion contrary to the one reached by the trial court. See White v. Ohio Dept. of Transp. (1990), 56 Ohio St.3d 39, 45, 564 N.E.2d 462, 468. Numerous questions of fact exist surrounding the extent and reasonableness of The Limited's reliance on the initial statements of Maldeis indicating that the shipment appeared to be a total loss. These questions of fact should have been resolved by the fact-finder and not by the trial court. I would reverse the judgment of the court of appeals on the promissory estoppel issue, and would remand that question to the trial court for further proceedings.

B

I also do not agree with the majority's discussion of the prejudgment interest question, contained in Part VI of the opinion, and so do not join in the syllabus law decided in this case. It is true, as the majority opinion states, that there is a split among the federal circuit courts of appeals regarding prejudgment interest and the Warsaw Convention. The problem with the majority's analysis of the issue is that as a precondition for the issue to arise, the damage-amount cap of the Warsaw Convention must first be met. The federal cases on prejudgment interest cited in the majority opinion involve situations in which a plaintiff wished to receive an award of prejudgment interest above the amount of the Warsaw Convention cap. But, in the case before us, the limit was never exceeded. Hence, there is no reason for us to reach or resolve this issue.

The Warsaw Convention caps Pan Am's potential liability at $245,951.19. The jury awarded The Limited $141,974.20, and the prejudgment interest awarded by the trial judge amounted to $49,424.72. Since the total amount awarded ($191,398.92) is

less than the limit mandated by the Warsaw Convention, that Convention is irrelevant to the resolution of the prejudgment interest issue.  The question is best resolved without resort to cases involving the Warsaw Convention, and should not result in syllabus law based on the Convention.

Nevertheless, I do agree with the majority that, upon remand, the question of whether prejudgment interest is appropriate should be presented to the jury to be considered in calculating a proper amount of compensatory damages.  Only in the event that the jury awards a total amount of damages in excess of the Warsaw Convention limitation must the trial judge then consider the application of that limitation to an award of prejudgment interest.  At that time, a resolution of the prejudgment interest question which has been decided differently in several federal courts of appeals would be necessary.  Compare O'Rourke v. Eastern Air Lines, Inc. (C.A.2, 1984), 730 F.2d 842 (Warsaw Convention does not permit the award of prejudgment interest above damages limitation), with Domangue v. Eastern Air Lines, Inc. (C.A.5, 1984), 722 F.2d 256 (prejudgment interest may sometimes be awarded above amount of Convention limitation).

On the other hand, if on remand the jury awards a total amount of damages, including some prejudgment interest, against Pan Am that is less than $245,951.19, no Warsaw Convention issue on prejudgment interest arises.  It is premature to now decide, as the majority does, that prejudgment interest in excess of the Convention's damage limitation is precluded in all cases, when that question is not really even before us.

Douglas, J., concurs in the foregoing opinion.