JOURNAL ENTRY AND OPINION
Plaintiff-home buyer Ava Riccardi brought this fraud action against defendant-seller Robert Levine claiming he failed to disclose a faulty furnace and the full nature of water seepage in a house he sold to her. A jury awarded plaintiff damages of $7,500. The court overruled motions for a new trial and judgment notwithstanding the verdict. In this appeal, seller contends (1) the court erred by failing to direct a verdict on the doctrine of caveat emptor, (2) the verdict is against the manifest weight of the evidence, and (3) the court abused its discretion when making certain evidentiary rulings.
Because the primary question on appeal is whether the court erred by refusing to direct a verdict on grounds of caveat emptor, we view the facts presented at trial in a light most favorable to buyer, the non-moving party. See Civ.R. 50(A)(4).
A tenant occupied the house when seller offered it for sale. There is no question the house had moisture problems. Seller admitted that when he lived in the house he had water in one corner of the basement a couple times during the year, and thought the water came into the basement when the downspouts clogged. Seller said that after water came into the basement, he would pull up the rug and use fans to dry the area. The tenant confirmed the extent of the water problem in the basement, saying that the day he moved in he saw seller had rolled back the carpet and was drying the area with a fan. Tenant said he and his family figured they could not count on the area being dry, so they stored their possessions in the corner by propping them up on paver bricks. Tenant said that water entered the basement even after he cleaned the gutters.
As required by law, seller submitted a residential property disclosure statement after he and buyer agreed on a selling price. In that statement, seller represented that there had been a water problem in the basement, but that water problem corrected with cleaning of downspouts. Ask current tenant. When buyer asked seller about the downspouts and the extent of a water problem, seller replied that a couple of times a year there was dampness in one corner of the basement, but that cleaning the gutters stopped the problem. Tenant said that shortly after learning from seller that the house would be offered for sale, he spoke to seller and informed him the cleaning of the gutters had improved things but we were still getting water.
Buyer did not speak with the tenants after receiving the residential property disclosure form. She did hire an inspector, and the inspector reported seeing some signs of basement dampness present. The inspector noted moderate moisture in walls * * *. This report did not concern buyer because she said that seller assured her there would not be a problem if she kept the gutters clean.
As for the furnace, tenant testified that during the winter of 1992, he had to relight the furnace pilot light four times. Tenant said he told seller about the problem with the pilot light. The disclosure form listed no defects with the house's mechanical systems. When buyer's house inspector looked at the furnace, he recommended to buyer that she obtain service on the furnace and conduct an in depth inspection. In addition, the inspector told buyer she should have the heat exchanger checked before settlement. Buyer had a structural engineer and an architect friend examine the house before she proceeded with the sale, but they looked at potential structural problems with the house, not the water problem.
Buyer proceeded with the purchase without making any further inquires. The purchase agreement contained the following clause:
 Conditions of property. Purchaser has examined the property and agrees that the property is being purchased in its AS IN [sic] present physical condition including any defects disclosed by the seller. Purchaser has not relied upon any representations, warrantees or statements about the property (including but not limited to its use or condition)
On the day she moved in, the furnace pilot light went out and her boyfriend had to keep relighting it. She later replaced the furnace at a cost of $2,115.
Buyer replaced the carpeting in the basement and shortly discovered one corner of the carpet saturated with water. She had the gutters cleaned but water again came into the basement. She checked with the prior tenants who told her they noticed if they kept the gutters clean it would prevent water in the basement, but tenant did concede they had water problems. A gutter contractor checked the gutters and told buyer the gutters were undersized. She replaced the gutters at a cost of $307.25, but continued to have water problems. Buyer then contacted a waterproofing contractor who charged her $7,500 for waterproofing.
Buyer's complaint asserted four separate fraud claims, but the case appeared to go to the jury on just two claims the water in the basement and the furnace. The court did not give a specific instruction on either count, nor did the parties test the jury's verdict with interrogatories. The jury returned a $7,500 general verdict for buyer.
 I
The first assignment of error complains the court erred by failing to direct a verdict on grounds that buyer's fraud claims were barred by the doctrine of caveat emptor. Seller claims buyer had more than sufficient notice of possible water problems in the basement for her to conduct further inspection before closing on the house; therefore, seller could not, as a matter of law, be liable under the circumstances.
The court must grant a motion for directed verdict when, after construing the evidence most strongly in favor of the party opposing the motion, it finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Civ.R. 50(A)(4); The Limited Stores, Inc. v. Pan American World Airways, Inc. (1992), 65 Ohio St.3d 66.
Civ.R. 50(A)(3) requires that [a] motion for directed verdict shall state the specific grounds therefor. A party who fails to so specify the grounds for a directed verdict motion will not preserve error for appeal. See Gayheart v. Dayton Power Light Co. (1994), 98 Ohio App.3d 220, 234-235.
Seller did not raise caveat emptor as a specific ground for relief in his motion for a directed verdict. The transcript shows that fraud was the only ground asserted in the oral motion for a directed verdict. Seller told the court:
 * * * Defendant would like to make a motion that the Court consider a directed verdict in favor of Defendant on the following grounds: If we look at the applicable law in this case, it has been agreed upon by Plaintiff and his Honor that the sole issue for the Court was a case of fraud; fraudulent inducement into the sale of a piece of real estate.
 If we look at the applicable law as contained in Plaintiff's own trial brief, which he filed with the Court yesterday, he referred to Ohio Supreme Court Gaines v. Preterm Cleveland, Inc., in which the Supreme Court had itemized the six elements which were required to be proven in order for Plaintiff to succeed on a claim of fraudulent misrepresentation.
 Briefly, Judge, we would propose that, based upon the evidence presented at this point, Plaintiff has sorely fallen significantly below his duty to prove these six elements. * * *
The rest of seller's argument went to establishing the various elements of fraud without any mention of the doctrine of caveat emptor. In fact, the only time caveat emptor arose was during buyer's argument to the court, where she told the court that caveat emptor did not apply in cases of fraud. Because caveat emptor was not a stated basis for the motion for a directed verdict, we consider the issue waived on appeal. We note, in any event, that the doctrine of caveat emptor is unavailable in a case like this when actual fraud is asserted, so seller's failure to specifically mention caveat emptor is of no consequence.
The issue that is preserved for appeal is whether the court erred by failing to direct a verdict on the fraud claims. An action in common-law civil fraud has five essential elements: (1) a material false representation or a concealment; (2) knowingly made or concealed; (3) with the intent of misleading another into relying upon it; (4) reliance, with a right to rely, upon the representation or concealment by the party claiming injury; and (5) injury resulting from the reliance. Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55; Finomore v. Epstein (1984),18 Ohio App.3d 88. As relevant to this case, seller had the obligation to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection. Layman v. Binns (1988), 35 Ohio St.3d 176, 178.
As we see it, the dispositive element for purposes of the motion for a directed verdict is the element of justifiable reliance on seller's representation that cleaning the gutters would correct the water problem buyer presented sufficient evidence on the remaining elements of fraud to permit the matter to go to the jury. Seller claims that buyer's home inspection report informing her that moisture was present in the home was sufficiently clear to make unjustified any reliance upon his statements about cleaning the gutters.
Taking the evidence in a light most favorable to buyer, it shows she received a residential property disclosure form that indicated current water leakage in the basement, but that it was corrected with cleaning of downspouts. Ask current tenant. Buyer conceded she did not speak to the tenants. Alerted to a water problem, buyer obtained a home inspection and learned there were some signs of present, moderate moisture in the walls. Upon receiving the inspection report, buyer said she again spoke to seller and seller assured her that if she kept the gutters clean, there would be no problem with water in the basement.
When a person has the opportunity to investigate, and when the circumstances would cause a person of ordinary care to investigate, and that person fails to do so, the element of justifiable reliance will not be proven. Cardi v. Gump (1997), 121 Ohio App.3d 16,22-23. In the ordinary case, the representations from a seller precede a home inspection. Consequently, a buyer who has obtained a negative home inspection cannot rely on statements made by a seller prior to the home inspection. See, e.g., Eiland v. Coldwell Banker Hunter Realty (1997), 122 Ohio App.3d 446, 458; Belluardo v. Blankenship (June 4, 1998), Cuyahoga App. No. 72601, unreported. Not only did buyer have the opportunity to inspect the premises, she had three other persons, two of whom were hired in a professional capacity, inspect the house. The unchallenged evidence is that the house inspector told buyer that he saw some signs of basement dampness present at the time, noting there was moderate moisture in walls * * *. Significantly, the inspector noted water was present at the time of the inspection. Buyer admitted the inspector looked at the house on a clear day. Reasonable minds could only find that buyer had been alerted to possible water problems in the basement before proceeding with the purchase.
Buyer claims, however, that she justifiably relied to her detriment on subsequent statements by seller that any water that leaked into the house did so because of clogged downspouts, and that cleaning the gutters would correct the problem. In Tipton v. Nizum (1992), 84 Ohio App.3d 33, 38, which we cited with approval in Eiland v. Coldwell Banker Hunter Realty, the court of appeals stated:
 Once alerted to a possible defect, a purchaser may not simply sit back and then raise his lack of expertise when a problem arises.
 Aware of a possible problem, the buyer has a duty to either (1) make further inquiry of the owner, who is under a duty not to engage in fraud, Layman, 35 Ohio St.3d at 177, 519 N.E.2d at 643, or (2) seek the advice of someone with sufficient knowledge to appraise the defect.
Buyer chose the first option making further inquiry of the seller about the water problem. Taking the evidence in a light most favorable to buyer shows that seller told her that cleaning the gutters would correct the problem. This statement did nothing more than confirm what seller had disclosed in the residential property disclosure form. Under the circumstances, we believe buyer could not justifiably rely on these further statements from seller. Significantly, buyer told the jury she was not a connoisseur of water problems, yet her testimony showed two of her previous homes required repair work for wet basements. A prudent buyer, having a history of owning homes with water problems, should have exercised more caution. Moreover, the disclosure statement told interested buyers that they should contact the tenants for additional information about a basement water problem, but buyer admitted she did not do so because the water problem did not cause her any concern and because it looked like a dry basement. As stated in Tipton, 84 Ohio App.3d at 268, a buyer cannot simply sit back and raise her lack of expertise when a problem arises. As a matter of law, buyer failed to show her reliance upon seller's statements after receiving a negative home inspection report were justified.
We must also address the issue whether the court erred by failing to direct a verdict on the claim for relief going to the furnace. Although the size of the jury's verdict (an amount equal to the cost of waterproofing) would suggest that it found for buyer solely on the water problem, buyer did argue to the jury that seller committed fraud by failing to disclose problems with the furnace. The court's instructions to the jury did not differentiate between the claims for water damage and the furnace, and neither side objected to those instructions or requested interrogatories to separate the claims for relief. It is therefore conceivable, if unlikely, that some portion of the jury's award was intended as compensation for fraud emanating from a failure to disclose a defect with the furnace.
Applying the same authority cited above, we find buyer had sufficient notice of a possible defect with the furnace that she could not reasonably rely on any failure to disclose a defect with the mechanical system. Buyer's home inspector looked at the house's heating system and said, recommend service in depth inspection. Buyer did not follow through on this recommendation. Having been placed on notice of a potential problem, she could not sit back until the problem arose. As a matter of law, buyer's notice of the problem rendered any reliance upon the residential disclosure statement unjustified. The court erred by failing to direct a verdict on this claim for relief. The first assigned error is overruled. The remaining assignments of error are moot. See App.R. 12(A)(1)(b).
It is ordered that appellants recover of appellees their costs herein taxed.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, ADMINISTRATIVE JUDGE KENNETH A. ROCCO, J., CONCUR.
 ____________________________ JOHN T. PATTON, JUDGE